UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNELL WILLIAMS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHNELL WALKER | CIVIL ACTION |
| VERSUS | NO: 22-3971 |
| JEFFERSON PARISH, ET AL. | SECTION: "A" (1) |

### ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 20)** filed by defendant, the Parish of Jefferson. The plaintiff, Johnell Williams, individually and on behalf of the Estate of Johnell Walker, opposes the motion. The motion, submitted for consideration on August 2, 2023, is before the Court on the briefs without oral argument.

On October 22, 2021, Johnell Walker was housed in the Jefferson Parish Correctional Center ("JPCC") "when he suffered a physical event which caused him to lose consciousness and become unresponsive." (Rec. Doc. 1, Complaint ¶ 6). Walker was left to remain in this unresponsive state for an extended period of time even though other inmates had attempted to alert the on-duty deputy so that Walker could receive immediate medical attention. (*Id.* ¶ 7). The reason alleged for Walker being left for an extended period of time without medical attention is that the on-duty deputy (referred to as "John Doe") had abandoned his assigned post, (*id.* ¶ 8), something that he did "frequently and habitually," (*id.* at 10). Walker ultimately passed away, although the Complaint does not include information about when he died, the official cause of death, or the nature of "the physical event" that allegedly led to his demise. While the

1

allegations do not suggest that it was any defendant's act or omission that triggered "the physical event," fault is grounded on the allegation Walker's death could have been prevented if he had received immediate medical care at the jail, and that the reason that such immediate medical care was not rendered was because Deputy John Doe had abandoned his post.

Thus, as alleged and accepted as true at the pleading stage, Walker died because he did not receive timely medical care at the jail, and the reason that he did not receive timely medical care was Deputy John Doe's dereliction of duty. The plaintiff herein, Mr. Johnell Williams, is Walker's father. The plaintiff has sued Deputy John Doe in his personal capacity pursuant to 42 U.S.C. § 1983 for any constitutional violations implicated by what occurred, and he has included a state law tort claim against Deputy Doe. Since Deputy Doe was employed by Sheriff Lopinto, and since Sheriff Lopinto operated the jail, Sheriff Lopinto has also been sued under both federal and state law.

The plaintiff has also sued Jefferson Parish. With respect to Jefferson Parish, the plaintiff alleges that this defendant is liable for failing to properly supervise/discipline/train deputies like John Doe who work at the JPCC. As described in his opposition memorandum, the claim against Jefferson Parish "deals primarily with its failure to train its staff and that it knew or should have known that "Mr. Walker's death could/would occur." (Rec. Doc. 23, Opposition at 1). The plaintiff's claims against Jefferson Parish are based upon multiple grounds, including the failure to train its deputies and the failure to properly supervise, monitor, and protect the inmates in its custody. (*Id.* at 3).

Jefferson Parish's motion to dismiss raises numerous arguments the most salient of which is that the Sheriff of Jefferson Parish is an independent and autonomous political subdivision under state law. Sheriff Lopinto, who was elected by the voters of the Parish and not appointed by the Parish's governing body, does not derive his authority via delegation from the Parish's governing body but rather via state law. Jefferson Parish points out that Deputy Doe is not alleged to have been an employee of the Parish; he is alleged to be a deputy under Sheriff Lopinto, who is charged under state law with running the jail, and who has plenary authority under state law to supervise/train/discipline his employees (like Deputy Doe) without oversight from the Parish. Jefferson Parish points out that the Complaint does not identify a single legal responsibility that Jefferson Parish has with respect to the deputies who staff the JPCC, much less that of supervising/disciplining/training them. In fact, under state law Jefferson Parish does not have the legal authority to usurp Sheriff Lopinto's role in supervising/disciplining/training his deputies or in operating the parish jail.

A § 1983 claim against a municipality like Jefferson Parish is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality may be liable under federal law for failing to train, supervise, or discipline an employee. *See, e.g., Watt v. City of New Orleans*, No. 22-3107, 2022 WL 17844624, at *3 (E.D. La. Dec. 22, 2022) (Africk, J.). To state a claim that a *Monell* claim that a municipality is liable for failing to train, supervise, or discipline an employee, the plaintiff must allege 1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, 2) that the municipality was deliberately indifferent in adopting the deficient policies, and 3) that the inadequate training, supervisory, or disciplinary policies directly caused the

3

violation in question. *Id.* (citing *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (Fallon, J.); *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020)).

The plaintiff's allegations vis à vis Jefferson Parish fail because the plaintiff has not identified a single policy attributable to Jefferson Parish that bears any causal relationship to Deputy Doe's conduct on the date in question. This is not surprising of course since as a matter of law, as outlined in the Parish's memorandum in support and unrefuted by the plaintiff, the Parish does not train, supervise, or discipline Sheriff Lopinto's staff, and it lacks the legal authority to do so. The Parish does not monitor or oversee the manner in which Sheriff Lopinto trains, supervises, or disciplines his deputies, and the plaintiff points to no authority to suggest that the Parish would even be authorized to do so. Thus, if Walker's death was caused by a constitutionally deficient policy with respect to training, supervising, or disciplining deputies at the jail, the policy was not Jefferson Parish's so Jefferson Parish cannot be liable under federal law.

As to the state law claim, since Deputy Doe was not an employee of Jefferson Parish but rather of the Jefferson Parish Sheriff's Office, the Parish cannot be vicariously liable for any damages caused by Deputy Doe's conduct. The plaintiff has not cited to a single decision in which a parish has been held liable under either federal or state law for the sheriff's alleged failure to train, supervise, or discipline a deputy officer in his employment. Jefferson Parish's motion to dismiss has merit and will be granted.[1]

---

[1] While the Court grants Jefferson Parish's motion to dismiss, the Court will not entertain a motion to enter a Rule 54(b) partial final judgment in favor of the Parish. Until the plaintiff

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 20)** filed by the Parish of Jefferson is **GRANTED**. All claims asserted against Jefferson Parish in this matter are dismissed with prejudice.

August 3, 2023

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

learns the identity of John Doe, and confirms without question that he was actually a deputy employed by the Sheriff's Office, the extremely remote possibility remains that the plaintiff may discover that John Doe was employed by someone other than the Sheriff. As of this writing neither the Sheriff nor the Sheriff's Office have answered the lawsuit to confirm John Doe's status as an employee.