UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHNELL WILLIAMS, INDIVIDUALLY
AND ON BEHALF OF
THE ESTATE OF JOHNELL WALKER                       CIVIL ACTION

VERSUS                                             NO: 22-3971

JEFFERSON PARISH, ET AL.                           SECTION: "A" (1)

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 91)** filed

by defendant, Sherriff Joseph P. Lopinto, III ("Sheriff Lopinto"). The plaintiff, Johnell

Williams, individually and on behalf of the Estate of Johnell Walker, opposes the

motion. The motion, submitted for consideration on March 4, 2026, is before the Court

on the briefs without oral argument. For the following reasons, the Court **GRANTS**

the motion.

## I.    Background

On October 22, 2021, Johnell Walker was housed in the Jefferson Parish

Correctional Center ("JPCC") when he overdosed on narcotics that had been

smuggled into the prison by another inmate.[1] Around the time of his death, the on-

duty deputy, Michael Molina, had abandoned his assigned post – in violation of JPCC

policy[2] – to turn in paperwork on an unrelated fight that had taken place earlier that

day. However, according to the testimony of other officers present, Molina was back

---

[1] *See generally* Rec. Doc. 91-2, Def.'s Statement of Uncontested Material Facts.
[2] Rec. Doc. 98-5, Depo. of Timothy Berrian, at 10:17-11:11.

1

on his post when the incident occurred.[3] Either way, he radioed central control and indicated "inmate down."[4] Two deputies, Scholl and Stevens, arrived on the unit and began administering CPR until EMS arrived.[5] Unfortunately, Walker was pronounced dead at the hospital and his death was eventually ruled an accidental overdose.[6]

The Jefferson Parish Sheriff's Office ("JPSO") requires that the Homicide Division investigate inmate deaths.[7] During the course of the investigation, JPSO officers determined that another inmate, Don Raines, had secreted drugs in his rectum and distributed them to the inmates on his housing pod, including to Walker.[8] Although the JPCC undergoes extensive efforts to halt the introduction of contraband into the facility, powdered narcotics, depending on where they are concealed on the body, can be very difficult to detect during security screenings.[9] While Plaintiff emphasizes that the presence of drugs in the jail always indicates a breach of safety (a fact which the defendants do not challenge), neither party disputes that JPCC had policies and procedures in place with the purpose of prohibiting entry of contraband into the facility, and that Walker self-ingested the drugs on his own volition.

---

[3] Rec. Doc. 91-7, Depo. of Deputy Kurt Scholl.
[4] *Id.*
Plaintiff contends that "Deputy Molina's presence in the control booth at the time of the "man down" call […] is genuinely in dispute." Rec. Doc. 98-1 ¶ 2. The Court agrees with Defendant that "not a single exhibit or deposition transcript contains a statement that Molina was away from his post" Rec. Doc. 101 at 1 n. 1. Ultimately, however, the issue is not material to the claims against Sheriff Lopinto.
[5] Rec. Doc. 91-2, Statement of Uncontested Material Facts, ¶ 14, 17.
[6] *Id.* ¶ 18-20.
[7] Rec. Doc. 91-1, Memo. in Support of Mot. for Sum. Judg., at 5.
[8] *Id.* at 6.
[9] *Id.* at 2.

The only claims remaining are against Sheriff Lopinto in his official capacity. Plaintiff asserts 42 U.S.C. § 1983 claims against him for failure to protect, failure to supervise, failure to train, and a survival action and wrongful death claim under Louisiana law. Sheriff Lopinto now seeks to dismiss these claims because there is no underlying constitutional violation, which is an essential element of municipal liability.[10] And even if the Court were to find a constitutional violation, he argues that Plaintiff has not shown that the municipality's training or supervision was inadequate, that any failure constituted a "deliberate indifference" towards Walker's constitutional rights, nor that any deficiency in training or supervision caused Walker's death.[11]

## II.    Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause,"

---

[10] *Id.* at 8.
[11] *Id.* at 8-12.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986)). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

### III.    Discussion

A suit against a public servant in his official capacity, such as Sheriff Lopinto, is treated as a suit against a public entity. A public entity may be liable pursuant to 42 U.S.C. § 1983 for failing to train, supervise, or discipline an employee only when an official policy or custom is the cause of a plaintiff's injuries. *See, e.g., Watt v. City of New Orleans*, No. 22-3107, 2022 WL 17844624, at *3 (E.D. La. Dec. 22, 2022) (Africk, J.). A section 1983 claim against a municipality is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To state a *Monell* claim, the plaintiff must allege 1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, 2) that the municipality was deliberately indifferent in adopting the deficient policies, and 3) that the inadequate training, supervisory, or disciplinary policies directly caused the violation in question. *Id.* (citing *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (Fallon, J.); *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020)).

4

As defendant correctly points out, the claims against Sheriff Lopinto fail because there is no underlying constitutional violation. *See Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010)). The Fifth Circuit, along with other sister circuits, has held that "the Eighth Amendment does not address injury caused by an inmate's voluntary acts […]." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016); *see e.g., Wronke v. Champaign Cty. Sheriff's Office*, 132 Fed.Appx. 58, 61 (7th Cir. 2005) (holding that an inmate "cannot manufacture a constitutional claim by volunteering for a job when he could have avoided the offending conditions by choosing to stay in his cell"). There is no dispute that Walker willingly ingested the drugs that led to his overdose. He cannot claim that the mere fact that drugs were smuggled into the prison somehow incapacitated him from exercising "ordinary responsibility for his own welfare." *See Legate*, 822 F. 3d at 211.

Further, there is nothing in the record to indicate that the prison guards failed to take reasonable measures to ensure prisoner safety, as required by the Eighth Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984). Plaintiff does not raise any facts that Walker did not receive prompt medical attention, and a failure to detect drugs smuggled into the prison does not itself violate a prisoner's constitutional rights. Finally, Molina stepping away from his post may be a violation of JPCC's policies and procedures, but his actions do not rise to the level of "deliberate indifference" necessary to be liable under the Eighth Amendment. "Violations of prison rules do not alone rise to the level of constitutional violations, and therefore,

5

such claims are not actionable under § 1983." *Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir. 1986).

Lastly, the Court finds that Plaintiffs' survival action and wrongful death claims should be dismissed because their viability is predicated upon the underlying section 1983 claim. *See Greene v. DeMoss,* 3:20-CV-00578, 2020 WL 7755690, at *10 (W.D. La. Dec. 11, 2020) (Hayes, J.), *report and recommendation adopted*, No. 3:20-CV-00578, 2020 WL 7755655 (W.D. La. Dec. 29, 2020) (observing that the plaintiff's assertion of a wrongful death and survival action merely represents a means or vehicle for them to recover damages for injuries sustained). Defendant is also correct that "[u]nder Louisiana law, law enforcement officials are not liable for injuries attributable to [the prisoner's] own willful act.'" *Abshure v. Prator*, 392 F. App'x 267 (5th Cir. 2010) (citing *Barlow v. City of New Orleans*, 257 La. 91, 241 So.2d 501, 504 (1970)).

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 91)** filed by Sheriff Joseph P. Lopinto, III is **GRANTED**. All remaining claims in this matter are **DISMISSED WITH PREJUDICE.**

March 24, 2026

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

6